IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CHARLES SIALES,                    )    CIVIL 13-00413 LEK-KSC
                                   )
          Plaintiff,               )
                                   )
     vs.                           )
                                   )
HAWAII ELECTRIC COMPANY, INC.      )
dba HECO, a Hawaii                 )
corporation,                       )
                                   )
          Defendant.               )
_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS COMPLAINT, FILED FEBRUARY 26, 2013 IN THE
CIRCUIT COURT OF THE FIRST CIRCUIT, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT AND FOR ATTORNEYS' FEES AND COSTS**

On August 30, 2013, Defendant Hawaii Electric Company,

Inc., doing business as HECO, a Hawaii corporation ("Defendant"

or "HECO"), filed its Motion to Dismiss Complaint, Filed

February 26, 2013 in the Circuit Court of the First Circuit, or

in the Alternative for Summary Judgment and for Attorneys' Fees

and Costs ("Motion").  [Dkt. no. 8.]  Plaintiff Charles Siales

("Plaintiff") filed his memorandum in opposition on October 7,

2013, and Defendant filed its reply on October 11, 2013.[1]  [Dkt.

nos. 20, 22.]

---

[1] Insofar as Defendant filed the instant Motion seeking
summary judgment, Defendant also filed its separate concise
statement in support of the Motion ("Defendant's CSOF") on
August 30, 2013.  [Dkt. no. 9.]  In response to Defendant's CSOF,
Plaintiff filed a concise statement of facts on October 7, 2013
("Plaintiff's CSOF").  [Dkt. no. 21.]

This matter came on for hearing on October 28, 2013. Appearing on behalf of Defendant was Mahilani Hiatt, Esq., and appearing on behalf of Plaintiff was Michael Healy, Esq.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, the Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

<u>**BACKGROUND**</u>

On February 26, 2013, Plaintiff filed his Complaint against Defendant in state court.  [Notice of Removal (dkt. no. 1), Exh. 1 ("Complaint").]  On August 23, 2013, Defendant removed the instant action to this district court.  [Dkt. no. 1.]  The Complaint alleges that Plaintiff was not offered a position at HECO because of his race (Hawaiian/Pacific Islander) and national origin (Micronesian).  [Complaint at ¶ 4.]

The Complaint alleges that, in May 2012, an agent of Accountemps, a personnel placement agency, contacted Plaintiff regarding a position at HECO.  [<u>Id.</u> at ¶ 8.A.]  Wilfred Lum, HECO Supervisor, Field Services & Collections, asked the Accountemps agent to have its applicants come in for testing no later than May 7, 2012, as HECO needed applicants available to start as early as the week of May 21, 2012, but would first need to complete a background check.  [Def.'s CSOF, Decl. of Wilfred Lum ("Lum Decl.") at ¶ 12; <u>id.</u>, Exh. 5.]  On May 7, 2012, Plaintiff

2

successfully passed the phase one tests for the part-time Data Entry Assistant position at HECO.  [Lum Decl. at ¶ 13.] Plaintiff also completed a "Non-Employee Application for HECO ID and HECO Access" form, on which he reported that, within the past ten years, he has lived in Hawai`I and Micronesia.  [Id. at ¶ 16; id., Exh. 6.]

On May 9, 2012, an employee of General Information Services, Inc. ("GIS"), LouAnn McKinney, contacted Plaintiff in order to obtain information for a background check that Accountemps had requested GIS to complete on its behalf (the "GIS background check").  [Pltf.'s CSOF, Decl. of Charles Siales ("Siales Decl.") at ¶ 2; id., Exh. A at 2-3;[2] Supplemental Exh. A

_____

[2] Exhibit A is a copy of several emails, including one that McKinney sent to Plaintiff with an attached document (the "Micronesian Packet") for him to complete and return to GIS for purposes of the GIS background check.  Exhibit A consists of multiple email correspondences that are not consecutively paginated.  The page numbers in this Court's citations to Exhibit A refer to the pages as they appear in the cm/ecf system.

At the hearing on the Motion, Mr. Healy represented that Exhibit A is an incomplete copy of the emails sent between Plaintiff and McKinney.  On October 30, 2013, Plaintiff filed a document titled, "Supplemental Exhibits 'B' and 'C' to Plaintiff's Memorandum in Opposition to Defendant's Motion" ("Plaintiff's Supplemental Exhibits").  [Dkt. no. 25.]  The Court notes that the exhibits attached to Plaintiff's Supplemental Exhibits are labeled "Exhibit A" and "Exhibit B," which the Court will refer to as "Supplemental Exhibit A" and "Supplemental Exhibit B," respectively, for clarity purposes.  On November 8, 2013, Defendant filed its response to Plaintiff's Supplemental Exhibits.  [Dkt. no. 26.]

The Court also notes that Plaintiff did not attach a
(continued...)

at 8.[3]]  On May 14, 2012, Lum sent an email to Accountemps

employee Bettea Eslava regarding the status of the drug tests and

background checks of several applicants, including Plaintiff.

[Lum Decl. at ¶ 15; id., Exh. 7 at 2.]  Eslava responded to Lum

that same day, stating, *inter alia*, that Plaintiff's background

check was still in progress and that a specimen had been

collected from Plaintiff on May 12, 2012.  [Lum Decl. at ¶ 15;

id., Exh. 7 at 1.]  Eslava also told Lum that three other

applicants had cleared their drug tests, and that the background

check of one of the three was also still pending.  [Id., Exh. 7

at 1.]  On May 15, 2012, Lum emailed Eslava again, noting that

HECO had not yet received Accountemps' results as to Plaintiff

and another applicant, and that applicants could not start work

unless their HECO background check came back negative.  [Id. at ¶

15; id., Exh. 7 at 1.]

       According to Defendant, on May 15, 2013, HECO sent a

request to Background Information Services, Inc. ("BIS") for an

_____

       [2](...continued)
declaration to authenticate Supplemental Exhibits A and B.
Supplemental Exhibit A appears to be another copy of the emails
sent between Plaintiff and McKinney.  Where appropriate, the
Court will cite to both Exhibit A and Supplemental Exhibit A.
Supplemental Exhibit B appears to be a copy of the Micronesia
Packet.

       [3] Supplemental Exhibit A consists of multiple emails that
are not consecutively paginated.  The page numbers in this
Court's citations to Supplemental Exhibit A refer to the pages as
they appear in the cm/ecf system.

independent background check of Plaintiff (the "BIS background
check"). [Lum Decl. ¶ 9.]  Plaintiff disputes this fact and
asserts that HECO actually contacted BIS on May 16, 2012.
[Pltf.'s CSOF at ¶ 10 (citing Lum Decl., Exh. 8); Def.'s CSOF at
¶ 10.]  In an email dated May 16, 2012, Lori Mac Arthur, a BIS
employee, provided Marlireen Aquino, HECO Staff Sergeant,
Security Division, the anticipated cost and duration of
conducting a background check of Plaintiff.  That same day,
Aquino emailed a response to Mac Arthur authorizing BIS to
proceed. [Lum Decl. at ¶¶ 4, 16; id., Exh. 8.]  Plaintiff says
that GIS had completed and sent the results of the GIS background
check to Accountemps that same day. [Siales Decl. at ¶¶ 2, 7;
id., Exh. A at 3; Supplemental Exh. A at 7-8.]  The parties do
not dispute that Plaintiff successfully passed the GIS background
check.  [Pltf.'s CSOF at ¶¶ 1-2; Reply, Decl. of Mahilani E.K.
Hiatt ("Hiatt Reply Decl."), Exh. 17 at ¶ 1-2.[4]]  Plaintiff
states:

>           4.   I was informed that HECO was doing an
>                additional check because I was Mirconesian.
>                I was informed about this by Sarah Gaston.
>
>                . . . .
>
>           8.   I was told that despite the fact that I
>                passed [the GIS background check] on May 16,

---

[4] Exhibit 17 is a chart comparing the material facts
asserted in Defendant's CSOF with the asserted controverting
facts in Plaintiff's CSOF.  Exhibit 17 also contains Defendant's
response to Plaintiff's CSOF.

                    2012, HECO wanted to do its own background
                    check because I was from Mirconesia.

[Siales Decl. at ¶¶ 4, 8.]  According to Lum, the BIS background

check was meant to be in addition to the GIS background check

because "[i]t is extremely important and necessary for HECO to

perform its own due diligence."  [Lum Decl. at ¶ 9.]

        Plaintiff telephoned Lum on May 30, 2012, and Lum

informed Plaintiff that HECO "was still waiting on his background

check."  [Id. at ¶ 19.]  Lum says that this was the only time

that he spoke to Plaintiff.  Lum notified Eslava and Elbe

Tsuchimoto, another Accountemps employee, that Plaintiff had

contacted him.  [Id.; id., Exh. 9 at 2.]  In his email to

Tsuchimoto, Lum stated that he hoped Plaintiff understood HECO's

need to do a thorough background check.  Tsuchimoto confirmed

that Accountemps had explained to Plaintiff that the hold up was

due to the pending background check.  [Id. at ¶ 19; id., Exh. 9

at 1.]

        On June 8, 2012, Lum wrote an email to Aquino asking

whether "there was any word on the background check" for

Plaintiff.  Aquino responded that the results were still pending.

[Id. at ¶ 20; id., Exh. 10.]  On June 13, 2012, Aquino contacted

Mac Arthur via email, inquiring about the status of Plaintiff's

background check.  The next day, Mac Arthur informed Aquino that

she was checking on the results and would let Aquino know when

                                    6

she heard back.  [Id. at ¶ 21; id., Exh. 11 at 1.[5]]  On June 15, 2012, Lum informed Eslava that HECO was still waiting on the results of Plaintiff's BIS background check.  Lum also informed Eslava that the current temporary employees were able to keep up HECO's workload, and therefore HECO no longer needed to hire Plaintiff.  [Id. at ¶ 22; id., Exh. 12.]

HECO did not receive notice that Plaintiff had successfully passed the BIS background check until June 22, 2012. [Id. at ¶ 23; id., Exh. 13.]  Although the results of the BIS background check gave Plaintiff clearance to proceed, there were no longer any vacant positions.  [Id. at ¶¶ 23-24.]

The Complaint alleges two causes of action:  violation of Title VII of the Civil Rights Act of 1964 ("Title VII") ("Count I"); and intentional and/or negligent infliction of emotional distress ("Count II").

In addition to the instant action, Plaintiff also filed a separate complaint against Accountemps ("Accountemps Complaint") in state court on November 15, 2012 ("Accountemps Action").[6]  Plaintiff asserts the same claims in both the instant

_____

[5] Exhibit 11 consists of multiple emails that are not consecutively paginated.  The page numbers in this Court's citations to Exhibit 11 are as they appear in the cm/ecf system.

[6] Plaintiff filed the Accountemps Complaint against Robert Half International, Inc., a Delaware corporation, doing business as Accountemps.  [Def.'s CSOF, Decl. of Mahilani E.K. Hiatt ("Hiatt Decl."), Exh. 14).]  Accountemps removed the Accountemps
(continued...)

Complaint and the Accountemps Complaint.  [Hiatt Decl., Exh. 14.]

## DISCUSSION

In the Motion, Defendant urges the Court to dismiss the Complaint for failure to join a required party under Rule 19 of the Federal Rules of Procedure, and for failure to state a claim upon which relief can be granted.  [Mem. in Supp. of Motion at 10-17.]

Defendant asserts that Accountemps is a required party under Rule 19(a) of the Federal Rules of Civil Procedure. Defendant argues that Accountemps must be joined as a defendant to the instant action, or the action must be dismissed.  [Id. at 11.]  The Court concludes that Accountemps is not a required party under Rule 19(a).  See Fed. R. Civ. P. 19(a); Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc., Civ. No. 12-00565 ACK-KSC, 2013 WL 2420907, at *27 (D. Hawai`I May 31, 2013) (quoting E.E.O.C. v. Peabody Western Coal Co., 400 F.3d 774, 779-80 (9th Cir. 2005) (discussing the Ninth Circuit's three-step inquiry in determining whether a case should be dismissed for failure to join an indispensable party)).  The Court therefore DENIES the Motion as to Defendant's request for dismissal for failure to join a required party.

_____

[6](...continued)
Action to this district court on June 10, 2013.  [Siales v. Robert Half Int'l, Inc., et al., 13-CV-00290 DKW-KSC, Notice of Removal, filed 6/10/13 (dkt. no. 1).]

Defendant also asserts that the Complaint fails to state a claim upon which relief can be granted. [Mem. in Supp. of Motion at 14 (citing Fed. R. Civ. P. 12(b)(6)).] In reviewing the Complaint, the Court concludes that Plaintiff has pled "sufficient factual matter 'to state a claim to relief that is plausible on its face.'" See Billete v. Deutsche Bank Nat'l Trust Co., Civil No. 13-00061 LEK-KSC, 2013 WL 2367834, at *5-6 (D. Hawai`I May 29, 2013 (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Court therefore DENIES the Motion to the extent that it seeks dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**I.   Summary Judgment**

Alternatively, Defendant argues that it is entitled to summary judgment as to Count I and Count II. The standard for summary judgment is well-known to the parties and does not bear repeating here. See, e.g., Rodriquez v. Gen. Dynamics Armament & Technical Prods., Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai`I 2010).

**A.   Count I - Title VII**

Plaintiff alleges that he was "wrongfully not hired, and suffered discrimination in terms, conditions, and privileges of his employment due to his race and national origin" in direct violation of Title VII. [Complaint at ¶¶ 10-11.]

Under Title VII, it is unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).

With respect to Title VII claims, the Court follows the framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), provides a "useful tool at the summary judgment stage" in addressing Title VII claims.  <u>See</u> <u>McGinest v. GTE Serv. Corp.</u>, 360 F.3d 1103, 1122 (9th Cir. 2004). Under this framework, Plaintiff has the initial burden to establish a prima facie case of discrimination.  <u>E.E.O.C. v. Boeing Co.</u>, 577 F.3d 1044, 1049 (9th Cir. 2009) (citation and quotation omitted).  "The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." <u>Cordova v. State Farm Ins. Cos.</u>, 124 F.3d 1145, 1148 (9th Cir. 1997) (citation omitted).
>
> After a plaintiff establishes a prima facie showing of discrimination, the burden under the <u>McDonnell Douglas</u> framework shifts to a defendant to put forward a legitimate, non-discriminatory reason for its actions.  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802, 93 S. Ct. 1817.  A defendant's burden to articulate some legitimate, nondiscriminatory reason for the challenged action is merely a burden of production, not persuasion. <u>Chuang v. Univ. of Cal. Davis Bd. of Trs.</u>, 225 F.3d 1115, 1123-24 (9th Cir. 2000).  If a defendant puts forth a legitimate, nondiscriminatory reason, the burden shifts back

to the plaintiff to show that the given reason is
merely pretext for a discriminatory motive.
Boeing Co., 577 F.3d at 1049 (citation and
quotation omitted).

Hughes v. Mayoral, 721 F. Supp. 2d 947, 957 (D. Hawai`I 2010)

(alteration in Hughes).

        "[A] plaintiff's burden is much less at the prima facie

stage than at the pretext stage." Hawn v. Exec. Jet Mgmt., Inc.,

615 F.3d 1151, 1158 (9th Cir. 2010) (citations omitted).  That

is, "[c]ircumstantial evidence of pretext must be specific and

substantial[,]" see Becerril v. Pima Cnty. Assessor's Office, 587

F.3d 1162, 1163 (9th Cir. 2009) (per curiam) (some alterations in

original) (citation and internal quotation marks omitted), and a

plaintiff must do more than merely deny the credibility of the

defendant's proffered reason, see Schuler v. Chronicle Broad.

Co., 793 F.2d 1010, 1011 (9th Cir. 1986) (citation omitted).  "A

plaintiff can show pretext directly, by showing that

discrimination more likely motivated the employer, or indirectly,

by showing that the employer's explanation is unworthy of

credence." Vasquez v. Cnty. of L.A., 349 F.3d 634, 641 (9th Cir.

2003) (footnote omitted); see also Coghlan v. Am. Seafoods Co.,

413 F.3d 1090, 1094-95 (9th Cir. 2005).  "Direct evidence

typically consists of clearly sexist, racist, or similarly

discriminatory statements or actions by the employer." Coghlan,

413 F.3d at 1095 (citations omitted).  "Circumstantial evidence,

in contrast, is evidence that requires an additional inferential

11

step to demonstrate discrimination." Id.

> Despite this "useful tool" of the McDonnell Douglas framework, there is nothing that "compels the parties to invoke the McDonnell Douglas presumption." McGinest, 360 F.3d at 1122. "When responding to a summary judgment motion . . . [the plaintiff] may proceed by using the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]." Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007) (quoting McGinest, 360 F.3d at 1122). If the plaintiff submits direct or circumstantial evidence, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." Id. (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)).

Hughes, 721 F. Supp. 2d at 957-58 (alterations in Hughes).

In the Motion, Defendant primarily relies on the McDonnell Douglas burden-shifting framework, arguing that Plaintiff is unable to establish a prima facie case of a Title VII claim. [Mem. in Supp. of Motion at 19-20 (citations omitted).] Plaintiff argues that the McDonnell Douglas framework is inapplicable, and instead contends that he has produced direct evidence of Defendant's discriminatory motive. [Mem. in Opp. at 13.] Plaintiff, however, also goes on to argue that Defendant must meet its burden of articulating a nondiscriminatory reason for not hiring Plaintiff, and that he would be able to directly show that Defendant's given reason is pretextual. [Id.] Insofar as it is unclear whether or not Plaintiff is invoking the McDonnell Douglas burden-shifting analysis, the Court will

consider both approaches.

### 1.   Direct or Circumstantial Evidence of a Discriminatory Motive

Plaintiff asserts that Gaston is an Accountemps employee, and that she specifically told Plaintiff that HECO was conducting the BIS background check because he is from Micronesia.  [Id. (citing Siales Decl. at ¶¶ 4, 8; id., Exh. A).] Plaintiff argues that this information from Gaston is direct evidence of Defendant's discriminatory motive not to hire him. [Id.]

The Court finds that Plaintiff has not provided sufficient evidence to establish that a discriminatory reason more likely than not motivated Defendant.  The only evidence that Plaintiff cites for support are the emails written between Plaintiff and McKinney, [Siales Decl., Exh. A; Supplemental Exh. A,] regarding his GIS background check,[7] and his own declaration. The Court notes that Gaston does not appear to have been a recipient of, or a participant in, these emails.  Furthermore, Plaintiff has not proffered any evidence to support his contention that Gaston is an employee of Accountemps.  Thus, insofar as Plaintiff's statements based on information received from Gaston and an unnamed source are inadmissible hearsay, see

---

[7] Exhibit A also contains an email that Plaintiff apparently sent to the Equal Employment Opportunity Commission, to which Plaintiff attached his email correspondence with McKinney. [Siales Decl., Exh. A at 2.]

Fed. R. Evid. 802, Plaintiff has not offered any admissible statements or actions to show that Defendant discriminated against Plaintiff based on his race or national origin.

After careful review, the Court concludes that Plaintiff has not offered any evidence that Defendant more than likely had a discriminatory motive in not hiring him.  Plaintiff has merely offered the uncorroborated allegations and self-serving statements in his own declaration.  The Court will now consider the McDonnell Douglas analysis.

### 2. *McDonnell Douglas* Burden-Shifting Analysis

#### a. Prima Facie Case

Under the McDonnell Douglas framework, Plaintiff must first establish a prima facie case of discrimination.  The requisite elements of Plaintiff's discrimination claim are: (1) he belongs to a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action; and (4) other similarly-situated individuals outside his protected class were treated more favorably.  See Walker v. Potter, 629 F. Supp. 2d 1148, 1164 (D. Hawai`I 2009) (citations omitted); see also Noyes v. Kelly Servs., 488 F.3d 1163, 1168 (9th Cir. 2007) (citation omitted); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (citation and footnote omitted).

In his memorandum in opposition, Plaintiff neither discusses the elements of a discrimination claim under Title VII,

14

nor points to any evidence in the record that would support his claim.  Instead, Plaintiff argues that the "<u>McDonnell Douglas</u> framework for establishing a prima facie claim of discrimination is not applicable to this case[.]"  [Mem. in Opp. at 13.]  The Court concludes that, even viewing the facts in the light most favorable to Plaintiff, he is be unable to establish a prima facie case for discrimination based on his race or national origin.  The Court notes that, even if the Court were to find that Plaintiff established a prima facie case, Plaintiff has not offered evidence that creates a genuine issue of material fact as to Defendant's nondiscriminatory reason for not hiring Plaintiff.

### b.   <u>Legitimate, Nondiscriminatory Reason</u>

Assuming, *arguendo*, that Plaintiff is able to establish a prima facie claim of discrimination, the burden shifts to Defendant to identify a legitimate, nondiscriminatory reason for not hiring Plaintiff.  Defendant asserts that its reason for not hiring Plaintiff is that he did not timely pass the BIS background check.  According to Defendant, HECO was within its rights under its contract with Accountemps (the "Agreement") to order an independent background check on Plaintiff through BIS.  [Mem. in Supp. of Motion at 21; Lum Decl., Exh. 2 at 1.]  The Agreement expressly states, "HECO reserves the right to conduct its own criminal conviction checks for any persons provided by [Accountemps] as HECO may deem necessary and/or appropriate,

under the circumstances." HECO received Plaintiff's results from BIS on June 22, 2013. Lum had even informed Eslava that none of the Accountemps applicants could start "unless their HECO background check [came] back negative." [Lum Decl., Exh. 7 at 1.] Although Plaintiff successfully passed the BIS background check, Defendant contends that there were no longer any vacant positions by that date. [Mem. in Supp. of Motion at 22; Lum Decl. at ¶¶ 23-24.]

Furthermore, Defendant asserts that it conducts independent background checks on applicants, in addition to those done by temporary employment agencies affiliated with HECO, for its own security purposes. [Mem. in Supp. of Motion at 5-6 (citing Lum Decl. at ¶ 9).] Lum states that, previously, although a temporary employment agency had cleared an applicant, HECO's independent background check revealed that the applicant had a criminal record, including a conviction for fraud and forgery. [Lum Decl. at ¶ 9.] Considering that this applicant, if hired, would have had access to HECO customers' personal information, Defendant contends that it is "important and necessary for HECO to perform its own due diligence." [Mem. in Supp. of Motion at 5 (citing Lum Decl. at ¶ 9).] The Court finds that Defendant has articulated a legitimate, nondiscriminatory reason for not hiring Plaintiff.

c.   **Pretext**

The burden then shifts back to Plaintiff to establish
that Defendant's nondiscriminatory reason for his non-selection
was pretextual.  According to Plaintiff, Defendant only initiated
the BIS background check after learning that Plaintiff is from
Mirconesia.  [Mem. in Opp. at 14 (citing Lum Decl., Exh. 8).]
Plaintiff contends that the BIS background check caused delays in
the hiring process which HECO used as a pretextual reason for not
hiring him.  [Id.]  Plaintiff contends that the following
evidence establishes pretext:  his email correspondence with
McKinney confirming that Accountemps informed HECO that Plaintiff
had successfully passed the GIS background check on May 16, 2012;
[Siales Decl. at ¶ 2; id., Exh. A; Supplemental Exh. A at 8;]
Gaston informed Plaintiff that HECO required an additional
background check because he is from Micronesia; [Siales Decl. at
¶¶ 4, 8;] and, on May 16, 2012, only after having learned that
Plaintiff is Micronesia, HECO initiated the BIS background check
on Plaintiff [Lum Decl., Exh. 8].  [Mem. in Opp. at 14-16.]

Defendant does not dispute that Plaintiff successfully
passed the GIS background check.  [Hiatt Reply Decl., Exh. 17 at
¶¶ 1-2.]  Thus, aside from his own statements, Plaintiff's only
evidence in support of his argument is the exchange of emails in
which HECO authorized BIS to conduct a background check on
Plaintiff.  Mac Arthur's email to Aquino notes that Plaintiff

17

listed an address for Micronesia on his application.  Mac Arthur then provides the anticipated cost and duration of completing the background check of Plaintiff, and asks whether HECO "would like to add this search."  [Lum Decl., Exh. 8.]  In her response, Aquino authorizes BIS to "proceed with the Micronesia International Criminal search for [Plaintiff]."  [Id.]

First, Plaintiff does not establish that discriminatory purposes more than likely motivated HECO in not hiring him.  The emails between Aquino and Mac Arthur do not contain clearly racist or similarly discriminatory statements or actions by HECO.  Nor are the emails specific and substantial evidence that Defendant had a discriminatory motive in ordering the BIS background check.  The Court therefore finds that Plaintiff is unable to directly show pretext on the part of Defendant.

Second, Plaintiff also fails to establish that Defendant's explanation is unworthy of credence.  According to Plaintiff, as of May 16, 2012, the date on which GIS sent the results of the GIS background check to Accountemps, the temporary position at HECO had not yet been filled.  Plaintiff argues that the position was still open when HECO received the GIS background check results, and only requested the BIS background check as a pretextual reason to delay hiring him.  [Mem. in Opp. at 15–16 (citing Lum Decl., Exh 8).]

18

Plaintiff attempts to controvert Defendant's assertion that HECO requested the BIS background check on May 15, 2012 by pointing out that the emails between Aquino and Mac Arthur are dated May 16, 2012. [Plft.'s CSOF at ¶ 10 (citing Lum Decl., Exh. 8).] Plaintiff asserts that HECO waited over a week to request the BIS background check, and that Accountemps had already received notice that Plaintiff passed the GIS background check on May 16, 2012. [Id.] The Court acknowledges Plaintiff's point that the emails between Aquino and Mac Arthur are dated May 16, 2012. Nevertheless, insofar as the parties do not dispute that Aquino, on behalf of HECO, gave the final authorization to proceed with the background check on May 16, 2012, [Def.'s CSOF at ¶ 12,] whether Defendant made its initial request for the BIS background check on May 15 or May 16 is not an issue of material fact. Furthermore, the Court notes that Plaintiff cannot establish the date on which HECO received the results of the GIS background check from Accountemps.

The Court notes that it is curious that Defendant would incur additional expenses to have an independent background check conducted on Plaintiff, especially when Defendant was already incurring the expense for the initial GIS background check. [Lum Decl., Exh. 2 at 1 ("Costs incurred by [Accountemps] to conduct background checks and drug testing will be added as pass through costs to be assumed by HECO.").] Nevertheless, nothing in the

19

timing or information being sought suggests that HECO had an illegitimate purpose for not hiring Plaintiff.

Accountemps first contacted Plaintiff regarding the temporary position at HECO in May 2012, [Complaint at ¶ 8.A.,] and he successfully completed the phase one tests on May 7, 2012 [Lum Decl. at ¶ 13]. HECO authorized the BIS background check for Plaintiff on May 16, 2012. [Id. at ¶ 16; id., Exh. 8.] The timing of events with respect to the BIS background check was unfortunate for Plaintiff. Nevertheless, the lapse of time between Plaintiff's first contact with Accountemps and HECO's authorization to BIS is insufficient to rebut Defendant's legitimate, nondiscriminatory reason for not hiring Plaintiff. The Court therefore concludes that Plaintiff has failed to create a genuine issue of material fact as to HECO's actual motivation for not hiring Plaintiff. Thus, even if Plaintiff had been able to establish a prima facie claim for discrimination under Title VII, the Court would ultimately grant the Motion for summary judgment as to Count I. Accordingly, the Court GRANTS the Motion for summary judgment as to Count I.

A.  **Count II - Intentional and/or Negligent Infliction of Emotional Distress**

Count II of the Complaint asserts intentional infliction of emotional distress ("IIED") and/or negligent infliction of emotional distress ("NIED") against Defendant. The Complaint alleges that, as a direct and proximate result of

Defendant's discriminatory actions, Plaintiff continues to suffer emotional and/or mental distress.  [Complaint at ¶ 17.] Plaintiff further alleges that Defendant's actions "are oppressive, outrageous, and otherwise characterized by aggravating the circumstances sufficient to justify the imposition of punitive damages."  [Id. at ¶ 18.]

### 1.   IIED

"The elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Hac v. Univ. of Haw., 102 Hawai`i 92, 106-07, 73 P.3d 46, 60-61 (2003) (adopting IIED standard from Restatement (Second) of Torts).

> In explaining the type of "outrageous" conduct that makes a claim for intentional infliction of emotional distress actionable, the Restatement (Second) of Torts states:

>> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member

> of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Ross v. Stouffer Hotel Co. (Hawai`i) Ltd., Inc., 76 Hawai`i 454, 465 n.12, 879 P.2d 1037, 1048 n.12 (1994) (quoting Restatement (Second) of Torts § 46, cmt. d. (1965)).  "The question whether the actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury."  Nagata v. Quest Diagnostics Inc., 303 F. Supp. 2d 1121, 1127 (D. Hawai`I 2004) (citing Shoppe v. Gucci Am., Inc., 94 Hawai`I 368, 387, 14 P.3d 1049, 1068 (2000), cert. denied, 2010 WL 2625261 (Hawai`I June 29, 2010)).

Even when viewed in the light most favorable to Plaintiff, the Court finds that the evidence does not demonstrate that Defendant's conduct that was outrageous, or beyond all bounds of decency.  Nor has Plaintiff demonstrated a genuine issue of material fact with respect to this claim.

## 2.  NIED

The elements of a claim for NIED are:  (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress.  Tran v. State Farm Mut. Auto. Ins. Co, 999 F. Supp. 1369, 1375 (D. Hawai`I 1998).  A cognizable claim for

NIED under Hawai`I law also "requires physical injury to either a person or property," see Calleon v. Miyagi, 76 Hawai`I 310, 320, 876 P.2d 1278 (1994), or a mental illness, see Haw. Rev. Stat. § 663-8.9. Dowkin v. Honolulu Police Dep't, Civ. No. 10-00087 SOM-LEK, 2010 WL 4961135, at *9 (D. Hawai`I Nov. 30, 2010). Duty and breach are essential elements of a negligence claim under Hawai`I law. See Cho v. Hawai`I, 115 Hawai`I 373, 379 n.11, 168 P.3d 17, 23, n.11 (2007) ("It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages." (citation omitted)).

The Court finds that Plaintiff has failed to identify any evidence of injury to his person or property or a diagnosed mental illness. The Court therefore GRANTS Defendant's Motion for summary judgment with respect to Count II.

C. **Attorneys' Fees and Costs**

Defendant argues that, pursuant to 42 U.S.C. § 2000e-5(k)[8] and Haw. Rev. Stat. § 604-14.5, the Court should award its

---

[8] In its Motion, Defendant argues that it is entitled to attorneys' fees and costs under 42 U.S.C. § 1988. [Mem. in Supp. of Motion at 24.] The Court notes that, insofar as Count I is a claim under Title VII, and Count II is based on state law, § 1988 is inapplicable to the instant action. Where an action is asserted under Title VII, a party may seek attorneys' fees under § 2000e-5(k). Thus, the Court construes Defendant's request as one pursuant to § 2000e-5(k), as set forth infra in Discussion

(continued...)

attorneys' fees and costs.   [Mem. in Supp. of Motion at 24.]

Defendant notes that Plaintiff "knew of two possible defendants

in this matter and nevertheless filed two separate complaints,

each with contradictory allegations."   [Id. at 25.]   Defendant

also notes that it provided written notice to Plaintiff's

counsel, dated August 29, 2013, of its intention to file a motion

to dismiss the Complaint, and that Defendant would seek its

attorneys' fees if Plaintiff did not dismiss the instant action.

[Id. (citing Hiatt Decl., Exh. 15).]

### 1.   **42 U.S.C. § 2000e-5(k)**

42 U.S.C. § 2000e-5(k) states, in relevant part:   "In

any action or proceeding under this subchapter the court, in its

discretion, may allow the prevailing party, other than the

Commission or the United States, a reasonable attorney's fee

(including expert fees) as part of the costs . . . ."   This

district court has stated:

> The United States Supreme court had established
> the following guidelines for the award of
> attorneys' fees to a prevailing defendant under
> § 2000e-5(k):
>
> > a district court may in its discretion award
> > attorney's fees to a prevailing defendant in
> > a Title VII case upon a finding that the
> > plaintiff's action was frivolous,
> > unreasonable, or without foundation, even
> > though not brought in subjective bad faith.

---

[8](...continued)

section III.A.

24

> In applying these criteria, it is important
> that a district court resist the
> understandable temptation to engage in *post
> hoc* reasoning by concluding that, because a
> plaintiff did not ultimately prevail, his
> action must have been unreasonable or without
> foundation.  This kind of hindsight logic
> could discourage all but the most airtight
> claims, for seldom can a prospective
> plaintiff be sure of ultimate success.

> Christiansburg Garment Co. v. E.E.O.C., 434 U.S.
> 412, 421-22 (1978).  In light of the Congressional
> intent to "promote the vigorous enforcement
> provisions of Title VII, a district court must
> exercise caution in awarding fees to a prevailing
> defendant. . . ." Warren v. City of Carlsbad, 58
> F.3d 439, 444 (9th Cir. 1995) (citations and
> quotation marks omitted) (citation and quotation
> marks omitted) [sic].  Courts therefore should
> only award fees to a prevailing defendant in a
> Title VII action under "exceptional
> circumstances."  See Saman v. Robbins, 173 F.3d
> 1150, 1157 (9th Cir. 1999).

Henderson v. Alexander & Baldwin, Inc., Civil No. 07-00101 DAE-

LEK, 2008 WL 2588712, at *4 (D. Hawai`I June 30, 2008).

> Furthermore,

> "[a]lthough a defendant has prevailed in a civil
> rights case and a plaintiff has not met its prima
> facie burden, it does not necessarily follow that
> attorney's fees should be awarded to the
> defendant.["] Berry v. E.I. Dupont de Nemours and
> Co., 635 F. Supp. 262, 266 (D. Del. 1986).
> Indeed, just "[b]ecause a plaintiff has not met a
> *prima facie* burden and has not presented enough
> evidence to show discriminatory treatment, such
> failure does not lead to a finding of frivolity or
> groundlessness."  Id.  Whether or not a plaintiff
> has established a prima facie case is but one fact
> in determining frivolity or groundlessness.  Id.
> Other factors for the court's consideration
> include offers of settlement by a defendant and
> whether the court dismissed the case prior to
> trial.  Id. (citing Sullivan v. School Bd. Of

Pinellas County, 773 F.2d 1182, 1189 (11th Cir.
1985)).

Kaalakea v. Hawaii Health Sys. Corp., Civil No. 07-00177DAE-KSC,
2008 WL 4809474, at *2 (D. Hawai`I Nov. 4, 2008) (some
alterations in original).

Although the Court herein concludes that Plaintiff did
not establish a prima facie case of discrimination under Title
VII, Defendant is not automatically entitled to its attorneys'
fees and costs.  See id. (citation omitted).  Defendant must
establish that Plaintiff's Title VII claim was so frivolous or
groundless so that Defendant is entitled to an award of
attorneys' fees under § 2000e-5(k).  First, the Court does not
agree with Defendant that the fact that Plaintiff filed a
separate complaint against Accountemps indicates that his claims
in the instant action are frivolous.  Second, Defendant's letter
to Plaintiff's counsel was not a settlement offer, and only
served as notice to Plaintiff that Defendant would seek its
attorneys' fees if he did not dismiss the action.  Thus, the
Court does not conclude that Plaintiff's Title VII claim was
frivolous or groundless, or that it was brought in bad faith.
Accordingly, the Motion is DENIED with respect to Defendant's
request for an award of attorneys' fees and costs under § 2000e-
5(k).

###### 2.   Haw. Rev. Stat. § 607-14.5

Haw. Rev. Stat. § 607-14.5(a) and (b) provide, in relevant part:

> (a)  In any civil action in this State where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess, against either party, whether or not the party was a prevailing party, and enter as part of its order, for which execution may issue, a reasonable sum of attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim or defense was frivolous as provided in subsection (b).
>
> (b)  In determining the award of attorneys' fees and costs and the amounts to be awarded, the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action. . . .
>
> . . . .

A "frivolous" claim is one that is "'so manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument in court is not required.'" Canalez v. Bob's Appliance Serv. Ctr., Inc., 89 Hawai`I 292, 300, 972 P.2d 297, 303 (1999) (quoting Coll v. McCarthy, 72 Haw. 20, 29, 804 P.2d 881, 887 (1991)).

The Court also herein grants Defendant's Motion with respect to Count II.  Defendant, however, has failed to establish that Plaintiff's IIED and NIED claims are so manifestly and palpably without merit so as to render them frivolous.  Thus, the

Court DENIES the Motion to the extent that it seeks an award of attorneys' fees and costs pursuant to Haw. Rev. Stat. § 604-14.5.

Finally, insofar as this Court GRANTS Defendant's Motion to the extent that it seeks summary judgment as to Count I and Count II, and DENIES Defendant's request for attorneys' fees and costs, the Court will not address the remaining issues in the Motion.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss Complaint, Filed February 26, 2013 in the Circuit Court of the First Circuit, or in the Alternative for Summary Judgment and for Attorneys' Fees and Costs, filed August 30, 2013, is HEREBY GRANTED IN PART AND DENIED IN PART.

The Motion is GRANTED to the extent that this Court GRANTS summary judgment in favor of Defendant as to Count I and Count II.  The Motion is DENIED, however, with respect to Defendant's request to dismiss the Complaint and Defendant's request for attorneys' fees and costs.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 27, 2013.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

CHARLES SIALES VS. HAWAII ELECTRIC COMPANY, INC.; CIVIL 13-00413 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT, FILED FEBRUARY 26, 2013 IN THE CIRCUIT COURT OF THE FIRST CIRCUIT, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND FOR ATTORNEYS' FEES AND COSTS